559 S.E.2d 833

**In the Matter of Rodman C. TULLIS, Respondent.**

**No. 25413.**

Supreme Court of South Carolina.

Heard Jan. 10, 2002.

Decided Feb. 11, 2002.

Attorney General Charles M. Condon and Senior Assistant Attorney General James G. Bogle, Jr., both of Columbia, for Office of Disciplinary Counsel, for petitioner.

Rodman C. Tullis, of Spartanburg, pro se.

## PER CURIAM.

Formal charges were filed against Rodman C. Tullis ("Respondent") on July 11, 2000.[1] Respondent failed to respond to the charges and an Affidavit of Default was filed on September 12, 2000. Therefore, under Rule 24 of Rule 413, SCACR, the charges were deemed admitted. The following charges were filed against Respondent.

### I. *Failure to Respond to Disciplinary Charges*

On September 15, 1999, the Commission on Lawyer Conduct ("Commission") received a complaint about Respondent from Judge Hall, Chief Magistrate for Spartanburg County. The Commission wrote Respondent on September 21 and requested a response within fifteen days. Respondent did not reply. The Commission wrote Respondent again on October 22, 1999, requesting a response to Judge Hall's complaint and informing Respondent that failure to reply to an inquiry was, in itself, grounds for discipline. Again, Respondent failed to reply.

The matter was referred to the Attorney General's Office. On January 17, 2000, a Notice of Full Investigation was served upon Respondent by certified mail. Respondent failed to respond within thirty days. A Subpoena Duces Tecum was also sent on January 17, requiring Respondent to present bank statements from his trust account at Carolina Southern Bank for the period January 1, 1999, through January 1, 2000. Respondent did provide some statements, but failed to provide the statements for the months of February, May, and October 1999. A follow-up Subpoena Duces Tecum was faxed to Respondent on July 13, 2000, requesting the missing statements as well as bank statements from Respondent's manage-

---

1. Respondent has previously received a Public Reprimand from this Court for misconduct in failing to competently represent client, failing to timely provide information about case to client or to client's employers, who had paid attorney to represent client, failing to promptly deliver funds paid on client's behalf to state of Florida to resolve matter of client's probation violation, and failing to reply promptly to inquiries by the Commission on Lawyer Conduct. *In the Matter of Tullis*, 330 S.C. 502, 499 S.E.2d 811 (1998).

ment account at the same bank for the same period. Respondent failed to send the missing statements from his trust account, and, while he did send the statements from his management account, Respondent did not send the statement from that account for May 1999.[2]

## II. *Bank Account Irregularities*

A review of Respondent's trust account statements supplied to the Commission, which did not include February, May, October, November, and December 1999 [3] showed the following: two (2) NSF service charges, six (6) service charges, one (1) daily overdraft charge, and three (3) negative balances. The check which lead to the complaint from Judge Hall (to be discussed in Section III) came from another account, Respondent's management account. On a review of that account (for which the May 1999 statement was missing) showed the following: twenty-three (23) NSF service charges, eight (8) service charges, eight (8) daily overdraft charges, and twenty-four (24) negative balances.

## III. *The Judge Hall Complaint*

A client of Respondent, Lawrence Ware ("Ware"), was arrested by the police in Wellford, South Carolina on two charges. A court date was set for February 16, 1999, in front of the Wellford Municipal Court. Respondent represented Ware regarding these charges. Respondent did not request a postponement of the hearing, nor did he request a jury trial. Neither Ware nor Respondent appeared on February 16, and Ware was tried in his absence. A Bench Warrant was issued

---

2. There appears to be some confusion about whether the November and December 1999 statements were received for either or both accounts. They do not appear in the exhibits. However, Mr. Bogle stated at the hearing before the Commission that there was "an error in the formal charges" and moved to amend the formal charges to delete the reference to the November and December 1999 statements since "we did get those." In the Panel Report, the reference to the November and December 1999 statements were deleted with respect to the trust account, but not with respect to the management account.

3. Again, there is confusion on which statements were received. The Panel Report refers to the November and December statements as missing here, although earlier in the report, the Panel states only the February, May, and October statements were missing.

for Ware, showing fines for the two tickets in the amount of $759.00 and $548.00 for a total of $1,307.00. Ware was picked up on the Bench Warrant, and since the Town of Wellford does not have a detention facility, Ware was confined at the Spartanburg County Jail.

After receiving notice of the situation, Respondent wrote a check for Ware's fines. The check was written on the Tullis management account at Carolina Southern Bank, in the amount of $1,307.00 payable to the Spartanburg Magistrate Court. The Magistrate Court deposited the check into its account and then wrote a check to the Town of Wellford. Respondent's check was returned for non-sufficient funds on June 29, 1999. Thereafter, there were repeated attempts by the Magistrate Court staff to contact Respondent in an effort to get him to make the check good, but without success. On one occasion, Respondent or a member of his staff brought to the Magistrate Court a cashier's check, but it was for the wrong amount and the court's accounting system could not accept it. Furthermore, the Magistrate Court Clerk and Judge Hall himself made repeated attempts, without success, to contact Respondent via telephone.

On September 13, 1999, Judge Hall wrote a letter of complaint to the Commission on Lawyer Conduct since there had been no payment by Respondent. Thereafter, in October 1999, Judge Hall made two more attempts to contact Respondent by telephone. In November of 1999, Judge Hall personally traveled to Respondent's office. However, Respondent was away attending a seminar. On December 10, 1999, Respondent finally paid the Spartanburg Magistrate Court $1,307.00.

A hearing before a Subpanel of the Commission was conducted on October 25, 2000. Respondent was present and represented himself. Respondent did admit the factual allegations, but presented "evidence" in mitigation. The Subpanel's Report, adopted by the Full Panel, found Respondent had committed misconduct. Specifically, the Panel found Respondent violated the following *Rules for Lawyer Disciplinary Enforcement*, Rule 413, SCACR: Rule 7(a)(1), violating a Rule of Professional Conduct; Rule 7(a)(3), knowingly failing to respond to a lawful demand from a disciplinary authority;

Rule 7(a)(5), engaging in conduct tending to pollute the administration of justice or to bring the legal profession into disrepute or conduct demonstrating an unfitness to practice law; and Rule 7(a)(6), violation of the oath of office taken upon admission to the practice of law in this state. Furthermore, the Panel found violations of the *Rules of Professional Conduct*, Rule 407, SCACR. The following violations regarding the Judge Hall Matter were cited by the Panel: Rule 1.2, scope of representation; Rule 1.3, failing to act with reasonable diligence and promptness in representing a client; Rule 1.4(a), failing to keep a client reasonably informed about the status of a matter; Rule 3.3, candor towards a tribunal; and Rule 4.1, truthfulness in statements to others. With regards to the bank account irregularities, the Panel found a violation of Rule 1.15, safekeeping of property. Regarding the failure to respond to an inquiry, the Panel found a violation of Rule 8.1(b), knowing failure to respond to a lawful demand for information from a disciplinary authority. Regarding all matters, the Panel found violations of Rule 8.4; specifically subsections (a), violating a Rule of Professional Conduct, (d), conduct involving dishonesty, fraud, deceit, or misrepresentation, and (e), engaging in conduct prejudicial to the administration of justice.

After finding all of these violations, however, the Panel made the following statements regarding mitigating circumstances:

> Notwithstanding the Respondent's default in responding to the formal charges, he did, in fact, appear at the Hearing and did offer to the panel, by way of mitigation, a history of unfortunate events which both preceded and overlapped the conduct complained of, which events included death within the Respondent's immediate family, severe domestic difficulties, involving and incurring by the Respondent of child custodial demands and responsibilities with which he was not confronted during happier times in the marriage which conflicted with his professional responsibilities. He also acknowledged that, during this time, his wife made unauthorized transaction in his trust account, without his knowledge, thereby resulting in a negative balance in his account.[4]

---

4. We note that wife changed the address on the account so the statements were sent to her address. However, Respondent did not notice

It is also clear to the panel from what the Respondent implied, if not outright stated, that he, as a result of these stressful events suffered from depression which left him in the state of paralysis with a limited ability to timely act or act appropriately, notwithstanding his intellectual understanding as to what, but for the depression and paralysis, he needed to do in order to appropriately discharge his responsibilities to the Court and to the Bar.

Based on the evidence presented in mitigation, the Panel recommended that Respondent pay the cost of the proceedings and receive an Admonition. We disagree with the Panel's recommended sanction.

First, Respondent personally appeared before the Subpanel, and presented extensive details concerning a death in the family and other difficulties that impacted upon his personal life. Respondent stated that he had been seeing a medical doctor once a month, but had recently been told not to come back for two months. The medical doctor had placed Respondent on anti-depressants. Respondent stated he was seeing a psychologist weekly for six months, and was now seeing him on an "as needed" basis. Respondent presented no medical evidence or medical testimony to support his claim. A member of the Subpanel even asked Respondent, "I don't understand with the responsibilities you have for your children, why some kind of medical evidence or testimony wasn't brought in here today with regard to your illness?" Respondent replied that "if I place those medical records into evidence before this Panel, I don't know where I will be ten years from now, or fifteen years from now, or five years from now, or next year, and if I were here representing a lawyer, or if it was in another forum and I was representing someone, I would think long and hard about placing medical records into a public record."

---

until several months had passed and only after the bank called him concerning a check. Respondent was responsible for his trust accounts and those who have access to it, and he was negligent in failing to correct the problem for several months. Although he claims he had no knowledge his wife had changed the address, he should have become aware of the problem when he did not receive the monthly statements from the bank for several months in a row.

We find the Panel lacked sufficient credible evidence to make a positive finding that Respondent suffered from clinical depression such that Respondent's ability to function and practice law was impaired. Respondent violated many Rules of Professional Conduct, and to mitigate the sanction, Respondent should have been required to present actual evidence of his illness. Respondent did not so much as offer an Affidavit from one of his doctors. While we do consider mental illness as a mitigating circumstance, medical evidence of an actual diagnosis must be presented in order to have the issue considered.

Secondly, Respondent has previously been sanctioned by this Court. *In the Matter of Tullis,* 330 S.C. 502, 499 S.E.2d 811 (1998). In that matter, the owners of a video rental store retained Respondent to clear up an outstanding warrant and driver's license problem of one of their employees. Respondent was paid a fee to handle the problem. Respondent contacted the Salvation Army in Florida about the employee's case, and agreed to send them money for probation supervision fees and the fine, together with proof that the employee had performed community service. However, Respondent never sent the money or the documentation. The Florida probation violation warrant against the employee remained outstanding. The Commission received a complaint from Respondent's client. However, Respondent failed to reply to two letters, numerous telephone messages, and a fax from the Attorney to Assist assigned to investigate the matter. This Court found Respondent's conduct warranted a Public Reprimand. In the instant case, Respondent has violated many of the same rules as he did in the first matter. In addition, Respondent has violated several more rules. Respondent's present conduct exceeds the gravity of that reflected in this Court's 1998 opinion where a public reprimand was issued.

## CONCLUSION

Based on the foregoing, we suspend Respondent from the practice of law for ninety (90) days for his conduct in this matter. Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Paragraph 30 of Rule 413,

SCACR. Further, Respondent is hereby ordered to pay the costs associated with this proceeding.

DEFINITE SUSPENSION.